## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **GREG JACKSON,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:11-CV-28-Y** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| **DEFENDANT.** | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Greg Jackson ("Jackson") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claim for disability insurance benefits under Title

II of the Social Security Act ("SSA").  Jackson applied for disability insurance benefits in July

2008, alleging disability commencing February 14, 2007.  (Tr. 13, 43-45, 48-50.)  His

application for benefits was denied initially and on reconsideration.  (Tr. 13.)  The ALJ held a

hearing on November 24, 2009 and issued a decision on January 26, 2010, finding that Jackson

was not disabled or entitled to disability insurance because he had the ability to perform jobs that

1

existed in significant numbers in the national economy. (Tr. 10-24, 276-93.) The Appeals Council denied Jackson's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 7-9.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98

2

(5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES[1]

Jackson presents the following issues:

1. Whether the ALJ erred by failing to weigh all of the medical opinions in the record;

2. Whether the ALJ properly incorporated all of the limitations he found supported in the record into the hypothetical question presented to the vocational expert ("VE"); and

---

[1] In an effort to improve clarity and efficiency in analyzing the issues, the Court has rephrased and summarized the issues set forth by Jackson.

3. Whether the ALJ erred, based on all of Jackson's limitations, by finding that Jackson could perform jobs identified by the VE.

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his January 26, 2010 decision, the ALJ found that Jackson met the disability insured status requirements of the SSA through March 31, 2009 and that he had not engaged in substantial gainful activity since February 14, 2007. (Tr. 15.) The ALJ further found that Jackson had the severe impairments of "diabetes mellitus with diabetic neuropathy, cervical disc disease, depression, carpal tunnel syndrome, and obesity." (*Id.*)

Next, the ALJ held that none of Jackson's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (*Id.*) As to Jackson's residual functional capacity ("RFC"), the ALJ stated:

> Through the date last insured, the claimant had the residual functional capacity to perform sedentary work[2] . . . that did not require overhead work or constant handling. He was able to do occasional fingering. He was able to understand, remember, and carry out simple tasks.

(Tr. 20 (emphasis omitted) (footnote added).) The ALJ opined, based on his RFC assessment, that Jackson was not able to perform his past relevant work but that there were jobs that existed in the national economy that Jackson was able to perform. Specifically, the ALJ, based upon the

---

[2] Sedentary work is defined as follows:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday. 20 C.F.R. § 404.1567(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

4

testimony of the VE, determined that Jackson could perform the occupations of small item inspector and hand laborer. Consequently, the ALJ found that Jackson was not disabled. (Tr. 23-24.)

## V. DISCUSSION

### A. Medical Opinions

Jackson argues that the ALJ failed to weigh all of the medical opinions of record, including the opinions of the following: (1) Basith Ghazali, M.D. ("Ghazali"), (2) Barna Richards, M.D. ("Richards"), (3) Frederick Cremona, M.D. ("Cremona"), and (4) Kelly Goodness, Ph.D. ("Goodness"). (Pl.'s Br. at 11-12.) In support of his argument, Jackson states the following:

> The Social Security Regulations place an affirmative duty upon the ALJ to weigh *every* opinion within the record. The Regulations state "regardless of its source, we will evaluate *every* medical opinion we receive." 20 C.F.R. § 404.1527(d), *emphasis added.* With regard to state agency medical and psychological consultants and other program physicians, the Social Security Rulings state "Administrative law judges and the Appeals Council may not ignore these opinions and *must explain the weight given to these opinions* in their decision." Social Security Ruling 96-6p, *emphasis added.* Here, the ALJ did not weigh every opinion nor did he explain the weight given to any opinion in evidence.

(Pl.'s Br. at 11.)

The regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. § 404.1527(b), (d); *see also* Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 404.1527(b), (e)(1).

The ALJ is entitled to consider treatment history or any other relevant factor that tends to support or contradict a medical source opinion. *See* 20 C.F.R. § 404.1527(d).

Violation of a regulation constitutes error and establishes a basis for reversal of the agency action and remand unless a reviewing court finds that the error is harmless. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Id.* at 622. Remand would be necessary only if the claimant's substantial rights have been affected. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result.") (internal quotation marks omitted)); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, the ALJ determined that Jackson had the RFC to perform sedentary work that did not require overhead work or constant handling, was limited to occasional fingering, and was limited to understanding, remembering, and carrying out simple tasks. (Tr. 20.) In making such decision, the ALJ went through the medical evidence in the record, including the following: (1) Ghazali's June 23, 2005 statement that Jackson sustained an injury to his right index finger in 2005, was unable to lift or carry anything using his right hand, and participated in occupational

6

therapy (Tr. 16; *see* Tr. 131);[3] (2) internal medicine examination performed on September 10,

2008 in which Richards' diagnosed Jackson with recurrent cervical disc disease and opined that

Jackson was "severely restricted" due to his problems (Tr. 17-18; *see* Tr. 141-43); (3) State

Agency Medical Examiner ("SAMC") Cremona's opinion in a Physical Residual Functional

Capacity Assessment ("PRFC") dated October 7, 2008 that Jackson was limited to occasional

reaching, handling, fingering, and feeling of the right upper extremity (Tr. 22; *see* Tr. 170); and

(4) Goodness' opinion after performing psychological evaluations on Jackson in April 2009 that,

*inter alia*, Jackson's "current depressed state, not adequately treated at that time with medication,

did not make him an appropriate candidate for academic training." (Tr. 19-20; *see* Tr. 274, 267-

75.) In addition, the ALJ also relied on the following medical evidence in the record: (1)

treatment records dated May through September 2007 indicating Jackson was exercising and

walking every day, his left shoulder pain was almost resolved and his depression was stable (Tr.

17; *see* Tr. 239, 241, 243) and (2) an orthopedic evaluation dated September 25, 2008 in which

Robert Myles, M.D. ("Myles") opined that Jackson could perform "sedentary or light duty" (Tr.

18-19).

Based on the foregoing, it is clear that the ALJ did *consider* the opinions of Ghazali,

Richards, Cremona, and Goodness in making his RFC determination and his ultimate decision

that Jackson was not disabled. However, it does not appear that the ALJ explicitly ascribed a

weight to all of the medical opinions in the record as required by the regulations.[4] Although the

---

[3] The Court notes that the ALJ did not state that Ghazali had made the June 23, 2005 statement; however, it is obvious that the ALJ was referring to Ghazali's statement when comparing the wording of the ALJ's decision with Ghazali's June 23, 2005 letter.

[4] The Court questions Jackson's contention that the ALJ did not assign any weight to the opinion of

ALJ failed to specify the weight he assigned to all the medical opinions in the record, the Court finds that any error is harmless as there is substantial evidence supporting the ALJ's disability determination. The medical evidence in the record discussed by the ALJ provides substantial support for the ALJ's RFC and disability determinations. In addition, there is no evidence that, even if the ALJ had specifically assigned a weight to all the medical opinions in the record, the result would be altered. Consequently, remand is not required.

### B. Hypothetical Question to the Vocational Expert

The next issue is whether the ALJ properly incorporated all of the limitations he found supported in the record into the hypothetical question presented to the VE. Specifically, Jackson argues that the ALJ found in his RFC determination that Jackson was limited to jobs that involved only occasional fingering but that the ALJ erred by failing to include such limitation in the hypothetical question to the VE. (Pl.'s Br. at 13.)

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d

---

Cremona, the SAMC. In the ALJ's decision, he specifically stated that Cremona's determination supported his conclusion that Jackson was not disabled prior to March 31, 2009 and was consistent with the objective and opinion medical evidence of record. (Tr. 22.)

8

431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

In this case, as noted above, the ALJ determined that Jackson had the RFC to perform sedentary work with the following limitations: (1) he could not perform work that required overhead work or constant handling; (2) he could only do occasional fingering; and (3) he was able to understand, remember, and carry out only simple tasks. (Tr. 20.) During the hearing, the ALJ asked Shelley Eike, the VE, to consider the following hypothetical:

> Now, consider that this person could be limited to sedentary work and he would be limited to understanding, remembering and carrying out simple tasks, should do no overhead work, should not do constant handling. Would there be a significant number of other jobs that such a person could perform?

(Tr. 291.) Based on this hypothetical, the VE testified that Jackson was capable of performing work as a small item inspector, small product assembler, or hand laborer. (*Id.*) Upon additional questioning from the ALJ, the VE further testified that all jobs would "involve frequent fingering" but then clarified that the "inspector[']s jobs" and the hand laborer jobs would require only "occasional fingering." (Tr. 291-92.)

In the hypothetical question that the ALJ originally asked the VE, the Court agrees with Jackson that the ALJ failed to properly incorporate the functional limitation of occasional fingering that he had found in his RFC assessment. (*Compare* Tr. 20 *with* Tr. 291.) However, upon further questioning, the ALJ did incorporate such limitation into the hypothetical and the VE testified that there were at least two jobs in the national economy that Jackson would be able to perform even with the additional limitation of occasional fingering. (Tr. 291-92.) Because the hypothetical question, after additional questioning by the ALJ, did incorporate all of Jackson's

9

limitations, the ALJ's determination that Jackson could perform the jobs of small item inspector or hand laborer based upon the testimony of the VE is supported by substantial evidence. *See, e.g., Reid v. Astrue*, No. 3:08-CV-1087-L, 2010 WL 1491633, at *5 (N.D Tex. Feb. 18, 2010) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("Since the ALJ correctly identified at least one job that Plaintiff could perform, any error in including [two other] jobs was harmless."). Thus, remand is not required.

### C. **VE Testimony**

Jackson further argues that the ALJ erred in finding that he could actually perform jobs identified by the VE. (Pl.'s Br. at 14.) Specifically, Jackson, citing to SSR 96-8p, states:

> First, the ALJ's [] RFC [determination] limited the Plaintiff to unskilled work due to the limitation that he could only understand, remember, and carry out simple tasks. However, the ALJ's written Decision also found "with regard to concentration, persistence or pace, the claimant had marked difficulties." Yet, there are no functional limitations or restrictions within the found RFC regarding his marked difficulty with concentration, persistence and pace. If the plaintiff were markedly limited in concentration, persistence and pace, the ALJ should have placed functional limitations addressing the limitations in his RFC. . . . The fact that the ALJ failed to include functional limitations within the RFC concerning the marked limitation in concentration, persistence and pace prejudiced the Plaintiff's right to a fair administrative review process. This is because the functional limitation of understanding, remembering and carrying out simple tasks deals with the individual's ability to perform cognitive tasks whereas functional limitations concerning the individual's concentration, persistence and pace deal with the individual's ability to attend to and complete tasks. The very nature of the jobs identified by the VE (inspection, assembly and laborer) are output or quota jobs. Because these types of jobs are going to require sustained concentration, persistence and pace to meet output and quota demands, the Plaintiff would not be able to perform them if he were markedly limited.

(Pl.'s Br. at 14-15 (internal citations omitted).)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants. 20 C.F.R. § 404.1520a. In evaluating mental

10

disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt 4, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. § 404.1520a(b)(2). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).[5] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine if it meets or equals a listed mental disorder under Sections 12.00-12.09 of the Listing. 20

---

[5] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 12.00C of the Listing.

C.F.R. § 404.1520a(d)(2).  To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.  20 C.F.R. § 404.1520a(d)(2).  If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment.  20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705.

RFC is what an individual can still do despite her limitations.[6]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id. See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  *Id.*  RFC is not the least an individual can do, but the most.  SSR 96-8p, 1996 WL 374184, at *2.  The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record.  *Id.* at *3-5.

The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence.  *Id.* at *7.  In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R. §§ 404.1529,

---

[6] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The RFC assessment is based upon "all of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. *Id.* When the ALJ considers non-exertional limitations,[7] he is to consider all work-related limitations and restrictions that do not depend on an individual's physical strength and is to express such non-exertional capacity in terms of work-related functions. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children).

In this case, while analyzing Jackson's mental impairment pursuant to the requirements under the regulations, the ALJ concluded that Jackson had a mild degree of limitation in his activities of daily living and social functioning, marked difficulties in concentration, persistence or pace, and no episodes of decompensation. (Tr. 16; *see* Tr. 15-16.) Based upon these findings, the ALJ concluded that Jackson had the severe mental impairment of depression but that such mental impairment did not meet or equal the criteria of listing 12.04. (Tr. 15-16.) The ALJ further stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental

---

[7] A "non-exertional limitation" is a limitation or restriction which affects a claimant's "ability to meet the demands of jobs other than what the strength demands." 20 C.F.R. §§ 404.1569a(a), 416.969a(a).

> impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(Tr. 16.) Continuing through the sequential disability analysis, the ALJ determined that Jackson had the mental RFC to understand, remember, and carry out simple tasks. (Tr. 20.)

Jackson argues, in essence, that the ALJ erred in his RFC assessment because the ALJ's finding of a marked deficiency in concentration, persistence, and pace is not related or analogous to a functional limitation in being able to understand, remember, and carry out simple tasks and that the ALJ should have included additional limitations in his mental RFC determination. However, as noted above, the responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In this case, the ALJ, based on all of the evidence in the record, determined that Jackson's marked limitation in concentration, persistence, and pace affected her RFC as a limitation to Jackson only performing work that involved simple tasks. Such an RFC determination is not inherently contradictory with the ALJ's earlier finding that Jackson was markedly limited in his ability to maintain concentration, persistence, or pace. *See Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence,

and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions); *Adams v. Astrue*, No. CV 07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace."); *Hodgson v. Astrue*, No. 4:07-CV-529-Y, 2008 WL 4277168, at *8 (N.D. Tex. Sept. 16, 2008) ("[The claimant] has not demonstrated that a restriction to simple one- and two-step tasks did not adequately accommodate her moderate difficulty maintaining concentration, persistence or pace."). *See also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("Based on this record, the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive tasks adequately captures [the claimant's] deficiencies in concentration, persistence or pace."); *Anderson v. Astrue*, No. 09-0971-TC, 2011 WL 1655552, at *3 (D.Or. Mar. 25, 2011) ("Moderate, and even marked limitations in the ability to maintain attention, concentration, persistence or pace are compatible with the ability to perform unskilled jobs involving simple tasks."); *but see Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or paces was not accommodated by limitation to simple tasks because it did not account for deficiencies in pace).

Work that is simple would most likely not require an abundance of concentration, persistence, or pace. *See Chadwell*, 2010 WL 3659050, at *11. Furthermore, the ALJ is not required to incorporate limitations that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). "While the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe,

15

the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairments must be word-for-word incorporated into . . . the RFC determination." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

The record indicates that the ALJ incorporated Jackson's functional limitations from his mental impairment into the RFC based upon the ALJ's evaluation of the evidence. The ALJ properly discussed the evidence in the record in making his RFC determination, noted his duty in assessing Jackson's RFC to provide a detailed assessment by itemizing the functional limitations caused by Jackson's mental impairment, explained the reasoning for his RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's RFC assessment, remand is not required.

In addition, Jackson, citing to SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000), argues that the VE erred by failing to give the Dictionary of Occupational Titles ("DOT") codes for any of the jobs she identified that Jackson could perform and there is a conflict between the VE's testimony regarding such jobs and the information contained about such jobs in the ("DOT"). (Pl.'s Br. at 15-16.) Specifically, Jackson argues:

> A review of the index of the jobs identified within the DOT[] indicates there are no jobs with the titles of "small item inspector" or "hand laborer." Also, the DOT identifies two small products assembler jobs. Those jobs are Small Products Assembler I (DOT: 706-684-022); and Small Products Assembler II (DOT: 739.687.030). However, both jobs are described as light in exertion and semi-skilled with a SVP[8] of 2. Also, the SCO states a Small Products Assembler I

---

[8] SVP, or Specific Vocational Preparation, refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* DICTIONARY OF OCCUPATIONAL TITLES ("DOT") app. C (rev. 4th ed.1991).

requires reaching, handling and fingering on a frequent basis and a Small Products Assembler II requires reaching, handling and fingering on a constant basis.[9] Due to the fact that the VE testified the small products assembler job was sedentary in exertion but the DOT states the job is light in exertion, the rest of her testimony is suspect and not wholly reliable. This fact is compounded by the fact that that she did not provide DOT codes for the jobs she identified. Without DOT codes, it cannot be concluded that the ALJ properly complied with [SSR] 00-4p.

(Pl.'s Br. at 15-16 (internal citations omitted) (footnotes added).)

When, as here, the ALJ reaches his disability determination at Step Five, it means that the claimant established a *prima facie* case of disability and the burden shifted to the Commissioner to show that other work exists in the national economy that the claimant can perform despite his impairments. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987); *Allsbury v. Barnhart*, 460 F.Supp.2d 717, 720 (E.D. Tex. July 13, 2006). When determining whether the claimant could adjust to alternate work that is within his RFC and that exists in significant numbers in the national economy, the ALJ may consult several sources, including the DOT and/or a VE. 20 C.F.R. § 404.1566(a), (d), (e). The availability of more than one approved source, however, presents the risk of conflict between the DOT's job descriptions and the VE's opinion regarding both the claimant's ability and the jobs' availability. *Gaspard v. Soc. Sec. Admin, Comm'r*, 609 F. Supp. 2d 607, 613 (E.D. Tex. 2009).

The Fifth Circuit has held that where there is a conflict between the VE's testimony and the DOT, the ALJ may rely upon the VE's testimony, provided that the record reflects an

---

Unskilled work usually requires less than thirty days training, which corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher. SSR 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000). *See also generally* 20 C.F.R. § 404.1568.

[9] The Court notes that, contrary to Jackson's assertions, the ALJ ultimately determined that Jackson could perform only the jobs of small item inspector and hand laborer. (Tr. 23-24.) Consequently, the Court will not address Jackson's arguments as to the job of small products assembler.

17

adequate basis for doing so. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Because this type of conflict surfaced somewhat frequently, the Commissioner issued SSR 00-4p to ensure that ALJs would expose and reconcile such conflict before relying on VE testimony. SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). Specifically, the ruling unambiguously establishes the ALJ's affirmative duty to bring to light and explain any possible conflict between the VE's testimony and the DOT:

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility to ask* about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the *adjudicator will*:
>
> > Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
> >
> > If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added). When there is a conflict, neither the DOT nor the VE evidence automatically "trumps" the other. *Id.* The conflict must be resolved by determining whether the VE's explanation is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id.* The ALJ must explain in his decision how any conflict that has been identified was resolved. *Id.*

Social Security rulings represent "statements of policy and interpretations" adopted by the Social Security Administration that are "binding on all components" of the Administration. 20 C.F.R. § 402.35(b)(1). While binding on the Administration, these interpretive rulings are not binding on the courts, so courts need not give them the force and effect of law. *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) (noting the varying degrees of deference the rulings may

18

be afforded); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). However, courts

may, as the Fifth Circuit frequently has, "rel[y] upon the rulings in evaluating ALJs' decisions."

*Myers*, 238 F.3d at 620.

An ALJ's violation of a ruling, in general, is reversible legal error, provided that the error

results in prejudice. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam) ("Should

an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and

any actions resulting from the proceeding cannot stand."). In addition, the Fifth Circuit has ruled

that, even when the ALJ fails to discover and address conflicts between the testimony of a VE

and the DOT, the claimant is not entitled to relief unless he can show that he was prejudiced by

the alleged error. *See DeLeon v. Barnhart*, 174 F.App'x 201, 203 (5th Cir. 2006).[10] *See, e.g.,*

*Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2006) (noting that the ALJ's legal error in

failing to ask about conflict negated the claimant's responsibility to raise the issue); *Burns v.*

*Barnett*, 312 F.3d 113, 126-27 (3d Cir. 2002) (remanding for the ALJ to handle the conflict in

accordance with SSR 00-4p).[11] A claimant establishes the requisite prejudice by showing that,

"if the ALJ had fully developed the record," additional evidence would have been produced that

---

[10] Unpublished Fifth Circuit opinions are not precedent but may be persuasive. 5th Cir. R. 47.5.4. *See also Romine v. Barnhart*, 454 F. Supp. 2d 623, 627 (E.D. Tex. 2006).

[11] Also persuasive to this Court is the holding by the Eastern District of Texas that a violation of SSR 00-4p constitutes legal error and that remand is warranted upon a finding of prejudice. *Romine v. Barnhart*, 454 F.Supp. 2d 623, 628 (E.D. Tex. 2006). In *Romine*, the ALJ did not perceive that any conflict existed and, thus, did not ask about any potential conflict. *Id.* In the written decision, the ALJ stated, "The vocational expert testified that the information provided conforms to the Dictionary of Occupational Titles." *Id.* Noting that the ALJ was mistaken, the *Romine* court clarified that the hearing transcript did not reveal any such testimony by the VE. *Id.* Indeed, the VE simply "recited DOT codes for the jobs she identified" but did not "acknowledge, discuss, distinguish or reconcile" the DOT requirements with the hypothetical limitation. *Id.* Recognizing that each job identified by the VE presented the conflict, the court held that prejudice was self-evident because the VE might change her mind when presented with the conflict or that the ALJ might not be satisfied with the VE's attempt to dismiss the conflict. *Id.* at 628-29.

"*might* have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (emphasis added).

Although the VE is not, *per se*, required to identify the specific DOT numbers to alleviate any potential inconsistencies,[12] the VE's failure to do so in this particular case makes it impossible for the Court to analyze any alleged conflict between the VE testimony and the DOT information.  In this case, the VE testified that Jackson was capable of performing the jobs of a small item inspector, small product assembler and hand laborer. (Tr. 291.)  The VE also testified that such jobs were unskilled, sedentary, and had an SVP of 2. (*Id.*)  When questioned further, the VE testified that the inspector jobs and the hand laborer jobs would require only occasional fingering but that the small product assembler job would require frequent fingering. (Tr. 291-92.)  However, notwithstanding Jackson's claims to the contrary, the ALJ only adopted the testimony of the VE that Jackson could perform the jobs of small item inspector and hand laborer.  The ALJ further stated that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*." (Tr. 24.)

Based on the testimony of the VE and a review of the DOT, it is impossible for the Court to determine whether a conflict exists between the two sources of information because neither the ALJ nor the VE provided the Court with enough information to locate such jobs in the DOT or refer to or explain any conflicts or inconsistencies between the VE's testimony and the information contained in the DOT.  It is unclear from the administrative record precisely which

---

[12] *See Haas v. Barnhart*, 91 F.App'x 942, 948 (5th Cir. 2004) ("[The claimant] cites no support for his claim that the DOT numbers for positions identified by the VE must be given."), *Nichols v. Astrue*, No. 5:09-CV-18-DCB-JMR, 2010 WL 5690390, at *12 (S.D. Miss. Apr. 20, 2010) ("Plaintiff does not cite any support for his claim that the DOT numbers for positions identified by the VE must be given."), *adopted in* Nichols v. Astrue, 5:09-CV-18-DCB-JMR, 2011 WL 359141 (S.D. Miss. Feb. 1, 2011).

particular jobs the claimant could perform. As noted by Jackson, a "review of the index of the jobs identified within the DOT[] indicates there are no jobs with the titles of 'small item inspector' or 'hand laborer.'" (Pl.'s Br. at 15.) A further review of the DOT indicates that there are over 150 types of inspector-type jobs that range in skill and strength level. Moreover, despite the ALJ's statement to the contrary, there is nothing in the hearing transcript that indicates that the ALJ actually inquired about any conflicts between the VE's testimony and the information contained within the DOT regarding the required skill and strength level, nor did the VE testify about any conflicts between her testimony regarding such skill and strength level and the DOT.

The ALJ's failure to adhere to SSR 00-4p prejudiced Jackson because the evidence that would have resulted from compliance with the ruling might have led to a different decision. *See Newton*, 209 F.3d at 458. If the ALJ had asked the VE whether her testimony conflicted in any way with the DOT's job descriptions regarding the skill and strength level, the VE's response could have summarily stated that no conflict existed, resulting in the same decision. Conversely, however, the same question could have prompted a discussion regarding what kinds of work these positions entail under the DOT and how those levels of work are or are not compatible with Jackson's limitations. The Court can only speculate as to whether the ALJ would have ultimately reconciled the conflict and arrived at the same conclusion. However, a finding of prejudice merely requires that this additional evidence "*might* have led to a different decision." *See Newton*, 209 F.3d at 458 (emphasis added). This requirement is satisfied because it is possible that this evidence would have caused the ALJ to decide differently due to the seemingly inherent incompatibility between a requirement to perform only sedentary work and the requirement of some of the inspector's jobs to perform higher levels of work. But this Court

21

need not establish this with certainty; that determination will be made on remand after "the ALJ ha[s] fully developed the record." *See id.*

The ALJ failed to fully develop the record as required by SSR 00-4p when he did not address the potential conflicts between the VE's testimony and the information in the DOT. There are no DOT job titles that contain the words "small item inspector" or "hand laborer" and many DOT job titles that contain the word "inspector," with each such job having varying exertional levels and SVPs. As it stands, however, the Court is unable to determine whether there actually are a significant number of jobs available in the national economy which Jackson could perform. *See Bridges v. Astrue*, No. 07-490-FJP-DLD, 2008 WL 4510037, at *5-6 (M.D. La. Sept. 30, 2008). Accordingly, the ALJ's failure to abide by SSR 00-4p prejudiced Jackson, and remand is warranted. *See Newton*, 209 F.3d at 458.[13]

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate

---

[13] Typically, another issue for consideration in a conflict case between the VE testimony and the DOT would be whether the claimant's failure to raise the conflict at the hearing essentially waived his present challenge. *See Carey*, 230 F.3d at 144-46. Because neither the VE nor the ALJ provided the Court with enough information to determine whether a conflict actually exists and, if so, what type of conflict does exist, the Court need not determine this issue and remand is required.

Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **September 6, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 23, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

23